1  Bridget Byrnes Hirsch, Esq., SBN 257015
2  *bhirsch@andersonkill.com*
   **ANDERSON KILL CALIFORNIA L.L.P.**
3  Wells Fargo Plaza
4  355 South Grand Avenue, Suite 2450
   Los Angeles, CA 90071
5  Tel.: (213) 943-1444
6  Fax: (212) 278-1733

7  William G. Passannante, Esq.*
8  *wpassannante@andersonkill.com*
   Raymond A. Mascia Jr., Esq.*
9  *rmascia@andersonkill.com*
10 **ANDERSON KILL P.C.**
   1251 Avenue of the Americas
11 New York, NY 10020
12 Tel.: (212) 278-1000
   Fax: (212) 278-1733
13 * *pro hac vice* application to be filed
14
   *Attorneys for Plaintiff TMX Holdco,*
15 *Inc. f/k/a Terminix International, Inc.*

16

17                    **UNITED STATES DISTRICT COURT**

18              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

19

| | |
|---|---|
| TMX HOLDCO, INC. f/k/a TERMINIX INTERNATIONAL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN SPECIALTY INSURANCE COMPANY n/k/a SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION, a Missouri corporation,<br><br>Defendant. | **Civil Action No.: 2:23-cv-01984**<br>**COMPLAINT FOR:**<br><br>(1) **BREACH OF CONTRACT**<br><br>(2) **DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

ANDERSON KILL CALIFORNIA L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

Plaintiff TMX Holdco, Inc. f/k/a Terminix International Inc. ("Terminix" or "Plaintiff"), as and for its Complaint against Defendant North American Specialty Insurance Company n/k/a Swiss Re Corporate Solutions America Insurance Corporation ("Swiss Re" or "Defendant"), alleges and states as follows:

## INTRODUCTION

1. This liability insurance coverage action arises out of Swiss Re's wrongful refusal to provide liability insurance coverage to Terminix for an $8,000,000 judgment rendered against Terminix in an underlying personal injury lawsuit under an excess commercial general liability insurance policy sold by Swiss Re. With interest and costs, the total judgment is $11,232,942.78.

2. Terminix brings this action for declaratory judgment and breach of contract to recover damages for Swiss Re's wrongful refusal to honor its promise that it "shall pay the amounts incurred by [Terminix] that qualify as **Loss**" – defined in Swiss Re's policy as "the total amount which [Terminix] has become legally liable to pay as damages by reasons of … judgment …."[1]

3. The underlying personal injury lawsuit is captioned *Atlas Ferrera v. Terminix International, Inc., et al.* (the "Ferrera Action"). The Ferrera Action was pending in the Superior Court of the State of California for the County of Los Angeles, Central District, under case number BC657474.

4. In the Ferrera Action, the plaintiff, Atlas Ferrera ("Ferrera"), alleged that, on May 1, 2015, he was exposed to pesticides that Terminix applied at a Los Angeles Starbucks through the wall of an adjoining beauty supply store where Ferrera was present. Ferrera alleged that the exposure caused him permanent loss of taste and smell. The Ferrera Action went to trial, and on March 10, 2020, the

---

[1] Unless otherwise noted, capitalized terms referred to the terms contained in the relevant insurance policies discussed below, and bolded terms herein are bolded in the applicable insurance policies.

**COMPLAINT**

-2-

jury returned an $8,000,000 verdict against Terminix.

5. Terminix's then-parent company, ServiceMaster Global Holdings, Inc. ("ServiceMaster"), purchased, for the "Policy Period" of January 1, 2015 to January 1, 2016, a tower of commercial general liability insurance under which Terminix is a "Named Insured."

6. Swiss Re sold the first layer of excess liability insurance in that tower, consisting of Following Form Commercial Excess Liability Insurance Policy, Policy Number EXS 2000267 00, with a "Policy Period" of January 1, 2015 to January 1, 2016 (the "Swiss Re Policy"). The Swiss Re Policy provides a $25,000,000 general "Aggregate Limit" of liability that cover claims against Terminix alleging bodily injury. In addition, ServiceMaster purchased and Swiss Re sold, for substantial additional premium, an additional $25,000,000 "Aggregate Limit" of liability that covers claims alleging bodily injury and which fall under the "Products-Completed Operations Hazard" of the Swiss Re Policy.

7. As confirmed by courts, the insurance industry, and the plain language of the Swiss Re Policy, the purpose of the Product-Completed Operations Hazard coverage in a commercial general liability policy is to protect a policyholder against the risk that its product or work may cause bodily injury to third parties away from the policyholder's premises, after the product leaves the policyholder's hands or the policyholder completes work. Here, the Products-Completed Operation Hazard plainly applies to the Ferrera Action because the alleged bodily injury arose out of Terminix's "product" or "work" away from its premises, as those terms are defined in the Swiss Re Policy.

8. Despite this well-established purpose of the Products-Completed Operations Hazard, Swiss Re wrongfully denied coverage for the Ferrera Action, arguing that the Products-Completed Operations Hazard does not apply to the Ferrera Action and that the general aggregate limit of the Swiss Re Policy is exhausted by Swiss Re's payment of a previous claim. Swiss Re also denied

**COMPLAINT**

-3-

coverage based on a purported prejudicial late notice defense.

9. Contrary to Swiss Re's denial, however, the Products-Completed Operations Hazard applies to the Ferrera Action as a matter of law. Moreover, Terminix provided timely notice of the Ferrera Action under the terms of the Swiss Re Policy. In any event, even if Terminix's notice was late (which it was not), Swiss Re cannot satisfy its burden of demonstrating that it suffered any prejudice in connection with Terminix's notice.

10. Accordingly, Terminix brings this action for declaratory judgment and breach of contract seeking damages from Swiss Re for the principal amount of the judgment and interest in excess of the limits of underlying insurance.

## THE PARTIES

11. Plaintiff Terminix is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Tennessee.

12. Defendant Swiss Re is an insurance company incorporated under the laws of the State of Missouri with its principal place of business in the State of Missouri.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14. This Court has personal jurisdiction over Swiss Re pursuant to Cal. Code Civ. Proc § 410.10 because Swiss Re regularly conducts business in this jurisdiction and engages in substantial and not isolated activity therein, the insurance policy in this case was sold in part to cover Terminix's potential liability in California, and the events giving rise to the claims in this case occurred in California.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims set forth herein

occurred in this District.

## FACTUAL BACKGROUND

**A. ServiceMaster Purchased from Swiss Re a Separate $25,000,000 Products-Completed Operations Limit Specifically to Protect Terminix in Connection with Claims Arising Out of Terminix's Product or Work Away from Its Premises**

16. Terminix provides termite and pest control services to residential and commercial customers throughout the United States. Accordingly, in 2015, ServiceMaster, Terminix's then-parent company, purchased a tower of commercial general liability insurance coverage to protect Terminix against claims alleging liability for bodily injury. The relevant insurance policies are set forth and described below.

**The Zurich Primary Policy**

17. Non-party Zurich American Insurance Company ("Zurich") sold the primary layer of insurance in the tower, consisting of Commercial Insurance Policy, Number GLO 2938656-06, with a Policy Period of January 1, 2015 to January 1, 2016 (the "Zurich Primary Policy"). *See* Ex. A.

18. The Zurich Primary Policy includes a "Commercial General Liability Coverage Part," subject to a "General Aggregate Limit" of $50,000,000 and an "Each Occurrence Limit" of $3,000,000. Ex. A at TERM0000004, TERM0000031.

19. The Zurich Primary Policy contains the following insuring agreement, which states in pertinent part:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.   Insuring Agreement**
>    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages

> because of "bodily injury" or "property
> damage" to which this insurance applies.

Ex. A at TERM0000035.

20. The Zurich Primary Policy states that it "applies to 'bodily injury'" that "is caused by an 'occurrence' that takes place in the 'coverage territory.'" Ex. A at TERM0000035.

21. "Occurrence" is defined by the Zurich Primary Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. A at TERM0000049.

22. The "General Aggregate Limit" of the Zurich Primary Policy is not exhausted.

**The Zurich Umbrella Policy**

23. Non-party American Guarantee and Liability Insurance Company ("American Guarantee") sold the next layer of insurance in the tower, consisting of Commercial Umbrella Liability Policy, Number AUC 5781296-01, with a Policy Period of January 1, 2015 to January 1, 2016 (the "Zurich Umbrella Policy"). *See* Ex. B.

24. The Zurich Umbrella Policy "follows form" to the Zurich Primary Policy – meaning that it adopts the terms of the Zurich Primary Policy. Specifically, the Zurich Umbrella Policy includes a section titled "**Coverage A – Excess Follow Form Liability Insurance**," which states that American Guarantee:

> will pay on behalf of the **insured** those damages covered
> by this insurance in excess of the total applicable limits
> of **underlying insurance**. With respect to **Coverage A**,
> this policy includes:
>
> **1.**   The terms and conditions of **underlying insurance** to the
>         extent such terms and conditions are not inconsistent or do not

> conflict with the terms and conditions referred to in Paragraph **2**. below; and
>
> **2.** The terms and conditions that apply to **Coverage A** of this policy.

Ex. B at TERM0000146.

25. The Zurich Umbrella Policy defines "**underlying insurance**" as the Zurich Primary Policy. Ex. B at TERM0000155.

26. The Zurich Umbrella Policy provides a $25,000,000 "Other Aggregate" limit and a separate $25,000,000 "Products/Completed Operations Aggregate" limit. Ex. B at TERM0000138.

27. The applicable limits of the Zurich Umbrella Policy have been exhausted by the payment of prior claims.

**The Swiss Re Policy**

28. Swiss Re sold the next layer of insurance, consisting of a first-level excess insurance policy titled Following Form Commercial Excess Liability Insurance Policy, Policy Number EXS 2000267 00, with a Policy Period of January 1, 2015 to January 1, 2016 (the "Swiss Re Policy"). *See* Ex. C.

29. The Swiss Re Policy provides a $25,000,000 "**Aggregate Limit** for the **Policy Period**" and a separate $25,000,000 "**Aggregate Limit** for the **Policy Period Products-Completed Operations**." Ex. C at TERM0000209.

30. The Swiss Re Policy contains an Insuring Agreement, which states in pertinent part:

> **INSURING AGREEMENT**
>
> In consideration of the payment of premium, and in reliance upon all statements made and information furnished to us and subject to all the terms hereinafter provided, we hereby agree as follows.
>
> **I.     COVERAGE**

(a) We shall pay the amounts incurred by the **Insured** that qualify as **Loss** in excess of the limit of liability of **Underlying Insurance**, subject to the **Limits of Insurance** as provided below. Liability under this policy with respect to any occurrence, loss or claim shall not attach unless and until the limit of liability of **Underlying Insurance** has been exhausted by the actual payment of **Loss**.

Ex. C at TERM0000211.

31. "**Loss**" is defined in the Swiss Re Policy as "the total amount which the **Insured** has become legally liable to pay as damages by reason of settlement, judgment or binding arbitration, which is, or but for the amount thereof would be, covered under this policy less any salvages or recoveries." Ex. C at TERM0000214.

32. The Swiss Re Policy states: "This policy is subject to the provisions, terms, conditions, exclusions and endorsements of the **Followed Policy**, except as provided otherwise by the **Limits of Insurance**, General Conditions, and other terms and exclusions of this policy, including any **Attached Endorsements**." Ex. C at TERM0000211.

33. The Swiss Re Policy defines "**Followed Policy**" as the Zurich Umbrella Policy. Ex. C at TERM0000214.

34. As noted, ServiceMaster purchased from Swiss Re a separate $25,000,000 limit of liability for bodily injury claims that fall under the "Products-Completed Operations Hazard." Ex. C at TERM0000209.

35. As confirmed by courts, the insurance industry, and the plain language of the Swiss Re Policy, the purpose of Product-Completed Operations Hazard is to

**COMPLAINT**

-8-

ANDERSON KILL CALIFORNIA L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

protect a policyholder against the risk that its product or work may cause bodily injury or property damage to third parties away from the policyholder's premises, after the product leaves the policyholder's hands or the policyholder completes work.

36. The Zurich Umbrella Policy defines "products-completed operations hazard" in pertinent part as:

> all **bodily injury** and **property damage** occurring away from premises you own or rent and arising out of **your product** or **your work** except:
> **a.** Products that are still in your physical possession; or
> **b.** Work that has not yet been completed or abandoned.
> **Your work** will be deemed completed at the earliest of the following times:
> **(1)** When all of the work called for in your contract has been completed;
> **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or
> **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Ex. C at TERM0000158.

37. The Zurich Umbrella Policy defines "**your product**" in pertinent part as:

**COMPLAINT**

-9-

>**Your product** means:
>
>**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
>**(1)** You ….

Ex. B at TERM0000159.

### B. The Terminix-Starbucks Services Agreement

38. As noted, Terminix provides termite and pest control services to residential and commercial customers throughout the United States.

39. Since January 1, 2011, Terminix provided various pest control services to Starbucks stores across the United States pursuant to a Services Agreement (the "Terminix-Starbucks Services Agreement").

40. Under the Terminix-Starbucks Services Agreement, the services included monthly pest inspection, treatments, and reporting. Under certain conditions, service could be escalated, including if a store notified Terminix that it received a "Health Department Violation."

41. In December 2021, Terminix began providing services under the Terminix-Starbucks Services Agreement to a Starbucks store located at 206 N Larchmont Blvd in Los Angeles, California (the "Larchmont Starbucks").

42. The Terminix-Starbucks Services Agreement defines the scope of work for Terminix's services.

### C. The Ferrera Action

43. On the morning of May 1, 2015, an inspector from the Los Angeles County Department of Public Health found live cockroaches at the Larchmont Starbucks and ordered it to close immediately.

44. In response to the closure order, Starbucks contacted Terminix, which dispatched technicians to the Larchmont Starbucks on May 1, 2015.

45. On April 27, 2017, Atlas Ferrera filed a lawsuit against Terminix

**COMPLAINT**

1 International, Inc. captioned *Atlas Ferrera v. Terminix International, et al.*, Case
2 No. BC657474, in the Superior Court of the State of California for the County of
3 Los Angeles, Central District (the "Ferrera Action"). Ex. D.

4      46.    Zurich appointed the law firm of Hinshaw & Culbertson LLP to
5 defend the Ferrera Action.

6      47.    In the Ferrera Action, the plaintiff, Atlas Ferrera ("Ferrera"), alleged
7 that, on May 1, 2015, he was exposed to pesticides that Terminix applied at the
8 Larchmont Starbucks through the wall of a neighboring beauty supply store where
9 he was present. Ferrera alleged that the exposure caused him permanent loss of
10 taste and smell. The Ferrera Action went to trial, and on March 10, 2020, the jury
11 returned an $8,000,000 verdict against Terminix.

12      48.    At the trial, the evidence showed that Ferrera allegedly had been
13 exposed to a pesticide called "Alpine Dust" *after* a Terminix technician applied the
14 Alpine Dust by using a "duster" he filled to "puff" the product into a storage room
15 wall through three small preexisting holes or ports in the Larchmont Starbucks.
16 The evidence further supported the conclusion that at the time Ferrera claimed he
17 was exposed, Terminix had completed its final pesticide treatment and was filling
18 out a service report for Starbucks.

19      49.    Following the jury verdict, Terminix moved for judgment
20 notwithstanding the verdict ("JNOV") and for a new trial. The Superior Court
21 denied the JNOV motion and granted the motion for a new trial. Ferrera appealed
22 the order granting a new trial to the California Second District Court of Appeal,
23 and Terminix cross-appealed the denial of the JNOV motion.

24      50.    By Opinion dated November 23, 2022 (the "November 23 Opinion"),
25 the California Second District Court of Appeal affirmed the trial court's denial of
26 Terminix's JNOV motion and reversed the trial court's order granting a new trial.

27      51.    Following the November 23 Opinion, Terminix filed a petition for
28 review with the California Supreme Court. On March 1, 2013, the California

**COMPLAINT**
-11-

Supreme Court denied Terminix's petition for review.

## D.  Swiss Re Wrongfully Denies Coverage for the Ferrera Action

52.  As noted above, Zurich sold the Zurich Primary Policy, which provides a "General Aggregate Limit" of $50,000,000 and an "Each Occurrence Limit" of $3,000,000.  The Zurich Primary Policy's general aggregate limit is not exhausted.  Accordingly, Zurich appointed defense counsel to defend the Ferrera Action.  Based on the recommendation of defense counsel, in coordination with Zurich, Zurich placed only a $75,050 reserve on the case.  The Zurich Umbrella Policy is exhausted through the payment of other claims.  Accordingly, on March 16, 2020, Terminix notified Swiss Re of the judgment in the Ferrera Action.

53.  By letter dated April 13, 2020, Swiss Re incorrectly denied coverage for the Ferrera Action on two purported grounds.  First, Swiss Re argued that the Products-Completed Operations Hazard does not apply to the Ferrera Action and that the general aggregate limit of the Swiss Re Policy is exhausted by Swiss Re's payment of a previous claim.  Second, Swiss Re asserted that it reserved the right "to deny coverage on the basis that late notice was prejudicial."  Both arguments are incorrect.

54.  Under the plain language of the Zurich Umbrella Policy, to which the Swiss Re Policy follows form, the Ferrera Action falls under the Products-Completed Operations Hazard as matter of law.  Specifically, the alleged bodily injury in the Ferrera Action "occurr[ed] away from premises [Terminix] own[s] or rent[s]" and "ar[ose] out of [Terminix's] product or [Terminix's] work."

55.  Swiss Re never disputed that the alleged bodily injury "occurr[ed] away from premises [Terminix] own[s] or rent[s]" and "ar[ose] out of [Terminix's] product or [Terminix's] work."  Rather, Swiss Re based its denial on the incorrect argument that the Ferrera Action falls under an exception to claims "arising out of … [Terminix's work] under the Products-Completed Operations Hazard for "[w]ork that has not yet been completed or abandoned."  This argument is

incorrect.

56. First, under the plain policy language, the exception to the Products-Completed Operations Hazard for "work that has not yet been completed or abandoned" does not apply to coverage for bodily injury that "ar[ose] out of [Terminix's] product." Ex. B at TERM0000158. Rather, the only exception to the Products-Completed Operations Hazard for claims alleging bodily injury that "ar[ose] out of [Terminix's] product" is for "[p]roducts that are still in [Terminix's] physical possession." Ex. B at TERM0000158. The pesticides applied by Terminix at the Larchmont Starbucks on May 1, 2015 were "product," as that term is defined in the Swiss Re Policy and no longer were in Terminix's "physical possession" at the time Ferrera alleged that he was exposed. Thus, even if Terminix's "work" was not "completed" at the time of Ferrera's alleged injuries, the Products-Completed Operations Hazard applies.

57. Second, under the plain policy language, Terminix's "work" was "completed" at the time of Ferrera's alleged injuries. Under the policy language, Terminix's work is deemed completed at the earliest of the following times:

> **(1)** When all of the work called for in your contract has been completed;
> 
> **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or
> 
> **(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> 
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Ex. B at TERM0000158.

58. Under this language, Terminix's work was "completed" under both

ANDERSON KILL CALIFORNIA L.L.P.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071

(or either) prongs (2) and (3) at the time of Ferrera's alleged injury because: (A) the work to be done at the Larchmont Starbucks, as called for in the Terminix-Starbucks Services Agreement, was complete; and/or (B) the pesticides applied by Terminix, that allegedly injured Ferrera, had been "put to [their] intended use" immediately upon being applied.

59. In addition, Swiss Re's assertion of a reservation of right "to deny coverage on the basis that late notice was prejudicial" also is incorrect. Based on the facts and the language of the Swiss Re Policy, Terminix's notice neither was late nor can Swiss Re demonstrate any prejudice associated with the timing of Terminix's notice of the Ferrera Action.

60. The Swiss Re Policy states: "As soon as reasonably practicable after the **Insured** becomes aware of any occurrence, loss or claim which, in the **Insured's** reasonable judgment, is likely to involve this policy, the **Insured** shall notify us of such occurrence, loss or claim in writing at the address stated in the Declarations. . . ." Ex. C at TERM0000214.

61. Terminix complied with this notice provision, which was drafted by Swiss Re, because there was no reasonable basis for Terminix to believe that the Ferrera Action would implicate the Swiss Re Policy prior to the jury's $8,000,000 verdict.

62. As noted above, Zurich appointed defense counsel to defend the Ferrera Action. Based on the recommendation of defense counsel, in coordination with Zurich, Zurich placed only a $75,050 reserve on the case.

63. Moreover, Swiss Re admitted that there was no reasonable basis for Terminix to believe that the Ferrera Action would implicate the Swiss Re Policy prior to the jury's verdict. For example, in Swiss Re's April 13 denial letter, Swiss Re stated that it "agree[d] with defense counsel's assessment that the $8,000,000 judgment is not supported by the evidence – particularly with respect to causation." Moreover, Swiss Re stated that: (1) there was "no evidence of how Alpine Dust

**COMPLAINT**

could have migrated into the restroom of the beauty supply store" where it allegedly caused Ferrera's injuries; (2) Alpine Dust "would not have produced the black cloud that" Ferrera "claim[ed] to have witnessed"; and (3) Ferrera's expert witness "lack[ed] scientific foundation and should have been excluded." In addition, Swiss Re acknowledge that "this is simply not a multimillion-dollar case, given that [Ferrera's] highest pre-trial demand was $1,950,000."

64. Accordingly, by Swiss Re's own admission, at the time of the trial in the Ferrera Action, Terminix, in its "reasonable judgment," had no basis to conclude that the Ferrera Action was "likely to involve" the Swiss Re Policy. Thus, Terminix's notice was timely under the Swiss Re Policy.

65. Finally, even if Terminix's notice was late (which it was not), Swiss Re was not and cannot demonstrate that it was prejudiced in any way in connection with Terminix's notice of the Ferrera Action. Swiss Re benefitted from a fully developed investigation of the Ferrera Action as completed by the primary insurance company, Zurich, and a trial record established by the Zurich-appointed defense counsel. Indeed, Swiss Re affirmatively stated that, based on this trial record, "the $8,000,000 judgment [was] not supported by the evidence – particularly with respect to causation." In addition, given Swiss Re's evaluation that the Ferrera Action "simply [was] not a multimillion-dollar case" and should be settled within the $3,000,000 primary limits of the Zurich Primary Policy, Swiss Re would not have intervened in the defense of the action or otherwise acted differently had it been provided notice before entry of the judgment.

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

66. Terminix re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

67. The Swiss Re Policy constitutes a valid and enforceable contract between Terminix and Swiss Re.

68. Under the terms of the Swiss Re Policy, Swiss Re has a contractual obligation to provide insurance coverage to Terminix for the Ferrera Action.

69. Terminix has satisfied all obligations currently owing under the Swiss Re Policy and has complied with all conditions necessary for coverage under the Swiss Re Policy.

70. Swiss Re's breaches, actions, and conduct described above constitute a breach of contract.

71. As a result of Swiss Re's breaches, Swiss Re is liable to Terminix for damages, the exact amount to be proven at trial, including but not limited to, compensatory damages, consequential damages, attorneys' fees, expenses, and costs, and pre- and post-judgment interest.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment)

72. Terminix re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

73. Pursuant to 28 U.S.C. § 2201, Terminix seeks declaratory judgment for the purpose of determining questions of actual controversy between the parties regarding the Swiss Re Policy.

74. The Swiss Re Policy constitutes a valid and enforceable contract between Terminix and Swiss Re.

75. The Ferrera Action triggers Swiss Re's coverage obligations because the Ferrera Action falls within the Products-Completed Operations Hazard of the Swiss Re Policy.

76. Swiss Re has breached its obligation under the Swiss Re Policy by failing to honor or by disputing its coverage obligations under the Swiss Re Policy with respect to the Ferrera Action.

77. Terminix is entitled to a declaratory judgment by this Court of its rights and the obligations of Swiss Re under the Swiss Re Policy with respect to

the Ferrera Action.

78. By reason of the foregoing, an actual and justiciable controversy exists between Terminix and Swiss Re regarding Swiss Re's obligations to cover the Ferrera Action.

79. Terminix thus seeks a judicial determination by this Court of Swiss Re's obligations to cover it for the Ferrera Action.

80. Specifically, Terminix seeks a declaration that the Swiss Re Policy's coverage for Products-Completed Operations Hazard has been triggered.

81. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Terminix respectfully requests judgment as follows:

1. With respect to the First Cause of Action:
   (a) Awarding money damages of no less than $8,232,942.78, including but not limited to, compensatory and consequential damages, in an amount to be determined at trial, plus pre-judgment and post-judgment interest, and attorneys' fees, expenses, and costs incurred in this action; and
   (b) Granting Terminix such other and further relief as the Court may deem just and proper.

2. With respect to the Second Cause of Action
   (a) Declaring that the Ferrera Action falls within the Products-Completed Operations Hazard of the Swiss Re Policy;
   (b) Granting Terminix its attorneys' fees, expenses, and costs incurred in this action; and
   (c) Granting Terminix such other and further relief as the Court may deem just and proper.

Dated: March 16, 2023        **ANDERSON KILL CALIFORNIA L.L.P.**

By:  /s/ Bridget Byrnes Hirsch
Bridget Byrnes Hirsch, Esq. SBN 257015
*bhirsch@andersonkill.com*
ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel.: (213) 943-1444
Fax: (212) 278-1733

William G. Passannante*
*wpassannante@andersonkill.com*
Raymond A. Mascia Jr.*
*rmascia@andersonkill.com*
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 278-1000
Fax: (212) 278-1733
* *pro hac vice* applications to be filed

*Attorneys for Plaintiff TMX Holdco, Inc. f/k/a Terminix International Inc.*

**COMPLAINT**

-18-

## DEMAND FOR JURY TRIAL

Terminix demands a trial by jury on all issues so triable.

Dated: March 16, 2023

**ANDERSON KILL CALIFORNIA L.L.P.**

By: /s/ Bridget Byrnes Hirsch

Bridget Byrnes Hirsch, Esq. SBN 257015
*bhirsch@andersonkill.com*
ANDERSON KILL CALIFORNIA L.L.P.
Wells Fargo Plaza
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Tel.: (213) 943-1444
Fax: (212) 278-1733

William G. Passannante*
*wpassannante@andersonkill.com*
Raymond A. Mascia Jr.*
*rmascia@andersonkill.com*
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 278-1000
Fax: (212) 278-1733
* *pro hac vice* applications to be filed

*Attorneys for Plaintiff TMX Holdco, Inc. f/k/a Terminix International Inc.*